Exhibit A

# Appendix C

## Tribal Labor Relations Ordinance

### Section 1:  Threshold of Applicability

(a)   If the Sycuan Band of the Kumeyaay Nation (Tribe) employs 250 or more persons in a tribal casino and related facility, it shall adopt this Tribal Labor Relations Ordinance (TLRO or Ordinance).  For purposes of this Ordinance, a "tribal casino" is one in which class III gaming is conducted pursuant to the tribal-state compact.  A "related facility" is one for which the only significant purpose is to facilitate patronage of the class III gaming operations.

(b)   Upon the request of a labor union or organization (any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work), the Tribal Gaming Commission shall certify the number of employees in a tribal casino or other related facility as defined in subsection (a) of this Section 1.  Either party may dispute the certification of the Tribal Gaming Commission to the Tribal  Labor Panel, which is defined in Section 13 herein.

### Section 2:  Definition of Eligible Employees

(a)   The provisions of this ordinance shall apply to any person (hereinafter "Eligible Employee") who is employed within a tribal casino in which class III gaming is  conducted pursuant to a tribal-state compact or other related facility, the only significant purpose of which is to facilitate patronage of the class III gaming operations, except for any of the following:

(1)   any employee who is a supervisor, defined as any individual having authority, in the interest of the Tribe and/or employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them or to adjust their grievances, or effectively to recommend such action, if in connection with

C-1

the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment;

(2)    any employee of the Tribal Gaming Commission;

(3)    any employee of the security or surveillance department, other than those who are responsible for the technical repair and maintenance of equipment;

(4)    any cash operations employee who is a "cage" employee or money counter; or

(5)    any dealer.

(b)    On [month] 1 of each year, the Tribal Gaming Commission shall certify the number of Eligible Employees employed by the Tribe to the administrator of the Tribal Labor Panel.

## Section 3:  Non-Interference with Regulatory or Security Activities

Operation of this Ordinance shall not interfere in any way with the duty of the Tribal Gaming Commission to regulate the gaming operation in accordance with the Tribe's National Indian Gaming Commission-approved gaming ordinance.  Furthermore, the exercise of rights hereunder shall in no way interfere with the tribal casino's surveillance/security systems, or any other internal controls system designed to protect the integrity of the Tribe's gaming operations.  The Tribal Gaming Commission is specifically excluded from the definition of Tribe and its agents.

## Section 4:  Eligible Employees Free to Engage in or Refrain From Concerted Activity

Eligible Employees shall have the right to self-organization, to form, to join, or assist employee organizations, to bargain collectively through representatives of their own choosing, to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities.

## Section 5:  Unfair Labor Practices for the Tribe

It shall be an unfair labor practice for the Tribe and/or employer or their agents:

(a)     to interfere with, restrain or coerce Eligible Employees in the exercise of the  rights guaranteed herein;

(b)     to dominate or interfere with the formation or administration of any labor  organization or contribute financial or other support to it, but this does not restrict the Tribe and/or employer and a certified union from agreeing to union security or dues check off;

(c)     to discharge or otherwise discriminate against an Eligible Employee because  s/he has filed charges or given testimony under this Ordinance; or

(d)     after certification of the labor organization pursuant to Section 10, to refuse to bargain collectively with the representatives of Eligible  Employees.

## Section 6:  Unfair Labor Practices for the Union

It shall be an unfair labor practice for a labor organization or its agents:

(a)     to interfere, restrain or coerce Eligible Employees in the exercise of the rights  guaranteed herein;

(b)     to engage in, or to induce or encourage any individual employed by any  person engaged in commerce or in an industry affecting commerce to engage in, a strike or a primary or secondary boycott or a refusal in the course of his employment to use, manufacture, process, transport or otherwise handle or work  on any goods, articles, materials, or commodities or to perform any services; or to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce or other terms and conditions of employment.  This section  does not apply to Section 11;

(c)     to force or require the Tribe and/or employer to recognize or bargain with a  particular labor organization as the representative of Eligible

Employees if another labor organization has been certified as the representative of such Eligible Employees under the provisions of this TLRO;

(d) to refuse to bargain collectively with the Tribe and/or employer, provided it is the representative of Eligible Employees subject to the provisions herein; or

(e) to attempt to influence the outcome of a tribal governmental election, provided, however, that this section does not apply to tribal members.

## Section 7: Tribe and Union Right to Free Speech

(a) The Tribe's and union's expression of any view, argument or opinion or the dissemination thereof, whether in written, printed, graphic or visual form, shall not constitute or be evidence of interference with, restraint, or coercion if such expression contains no threat of reprisal or force or promise of benefit.

(b) The Tribe agrees that if a union first offers in writing that it and its local affiliates will comply with (b)(1) and (b)(2), the Tribe shall comply with the provisions of (c) and (d).

(1) For a period of three hundred sixty-five (365) days following delivery of a Notice of Intent to Organize (NOIO) to the Tribe:

(A) not engage in strikes, picketing, boycotts, attack websites, or other economic activity at or in relation to the tribal casino or related facility; and refrain from engaging in strike-related picketing on Indian lands as defined in 25 U.S.C. § 2703(4);

(B) not disparage the Tribe for purposes of organizing Eligible Employees;

(C) not attempt to influence the outcome of a tribal government election; and

(D)     during the three hundred sixty-five (365) days after the Tribe received the NOIO, the Union must collect dated and signed authorization cards pursuant to Section 10 herein and complete the secret ballot election also in Section 10 herein.  Failure to complete the secret ballot election within the three hundred sixty five (365) days after the Tribe received the NOIO shall mean that the union shall not be permitted to deliver another NOIO for a period of two years (730 days).

(2)     Resolve all issues, including collective bargaining impasses, through the binding dispute resolution mechanisms set forth in Section 13 herein.

(c)     Upon receipt of a NOIO, the Tribe shall:

(1)     within two (2) days provide to the union an election eligibility list containing the full first and last names of the Eligible Employees within the sought-after bargaining unit and the Eligible Employees' last known addresses, telephone numbers and email addresses;

(2)     for period of three hundred sixty-five (365) days thereafter, not act in any way which is or could reasonably be perceived to be anti-union.  This includes refraining from making derisive comments about unions; publishing or posting pamphlets, fliers, letters, posters or any other communication which should be interpreted as criticism of the union or advises Eligible Employees to vote "no" against the union.  However, the Tribe shall be free at all times to fully inform Eligible Employees about the terms and conditions of employment it provides to employees and the advantages of working for the Tribe; and

(3)     resolve all issues, including collective bargaining impasses, through the binding dispute resolution mechanisms set forth in Section 13 herein.

(d)     The union's offer in subsection (b) of this Section 7 shall be deemed an offer to accept the entirety of this Ordinance as a bilateral contract

between the Tribe and the union, and the Tribe agrees to accept such offer.  By entering into such bilateral contract, the union and Tribe mutually waive any right to file any form of action or proceeding with the National Labor Relations Board for the three hundred sixty-five (365)-day period following the NOIO.

(e)     The Tribe shall mandate that any entity responsible for all or part of the operation of the casino and related facility shall assume the obligations of the Tribe under this Ordinance.  If at the time of the management contract, the Tribe recognizes a labor organization as the representative of its employees, certified pursuant to this Ordinance, the labor organization will provide the contractor, upon request, the election officer's certification which constitutes evidence that the labor organization has been determined to be the majority representative of the Tribe's Eligible Employees.

## Section 8:  Access to Eligible Employees

(a)     Access shall be granted to the union for the purposes of organizing Eligible Employees, provided that such organizing activity shall not interfere with patronage of the casino or related facility or with the normal work routine of the Eligible Employees  and shall be done on non-work time in non-work areas that are designated as employee break rooms or locker rooms that are not open to the public.  The Tribe may require the union and or union organizers to be subject to the same licensing rules applied to individuals or entities with similar levels of access to the casino or related facility, provided that such licensing shall not be unreasonable, discriminatory, or designed to impede access.

(b)     The Tribe, in its discretion, may also designate additional voluntary access to the Union in such areas as employee parking lots and non-casino facilities located on tribal lands.

(c)     In determining whether organizing activities potentially interfere with normal tribal  work routines, the union's activities shall not be permitted if the Tribal Labor Panel  determines that they compromise the operation of the casino:

(1)     security and surveillance systems throughout the casino, and reservation;

(2)     access limitations designed to ensure security;

(3)     internal controls designed to ensure security; or

(4)     other systems designed to protect the integrity of the Tribe's gaming operations, tribal property and/or safety of casino personnel, patrons, employees or tribal members, residents, guests or invitees.

(d)     The Tribe agrees to facilitate the dissemination of information from the union to Eligible Employees at the tribal casino by allowing posters, leaflets and other written materials to be posted in non-public employee break areas where the Tribe already posts announcements pertaining to Eligible Employees. Actual posting of such posters, notices, and other materials shall be by employees desiring to post such materials.

## Section 9: Indian Preference Explicitly Permitted

Nothing herein shall preclude the Tribe from giving Indian preference in employment, promotion, seniority, lay-offs or retention to members of any federally recognized Indian tribe or shall in any way affect the Tribe's right to follow tribal law, ordinances, personnel policies or the Tribe's customs or traditions regarding Indian preference in employment, promotion, seniority, lay-offs or retention. Moreover, in the event of a conflict between tribal law, tribal ordinance or the Tribe's customs and traditions regarding Indian preference and this Ordinance, the tribal law, tribal ordinance, or the Tribe's customs and traditions shall govern.

## Section 10: Secret Ballot Elections

(a)     The election officer shall be chosen within three (3) business days of notification by the labor organization to the Tribe of its intention to present authorization cards, and the same election officer shall preside thereafter for all proceedings under the request for recognition; provided, however, that if the election officer resigns, dies, or is incapacitated for any other reason from performing the

functions of this office, a substitute election officer shall be selected in accordance with the dispute resolution provisions herein.  Dated and signed authorized cards from thirty percent (30%) or more of the Eligible Employees within the bargaining unit verified by the elections officer will result in a  secret ballot election.  The election officer shall make a determination as to whether the required thirty percent (30%) showing has been made within one (1) working day after the submission of authorization cards.  If the election officer determines the required thirty percent (30%) showing of interest has been made, the election officer shall issue a notice of election.  The election shall be concluded within thirty (30) calendar days of the issuance of the notice of election.

(b)    Upon the showing of interest to the election officer pursuant to subsection (a), within two (2) working days the Tribe shall provide to the union an election eligibility list containing the full first and last names  of the Eligible Employees within the sought after bargaining unit and the Eligible Employees' last known addresses, telephone numbers and email addresses.  Nothing herein shall preclude a Tribe from voluntarily providing an election eligibility list at an earlier point of a union organizing campaign with or without an election.

(c)    The election shall be conducted by the election officer by secret ballot pursuant to procedures set forth in a consent election agreement in substantially the same form as Attachment 1.  In the event either that a party refuses to enter into the consent election agreement or that the parties do not agree on the terms, the election officer shall issue an order that conforms to the terms of the form consent election agreement and shall have authority to decide any terms upon which the parties have not agreed, after giving the parties the opportunity to present their views in writing or in a telephonic conference call.  The election officer shall be a member of the Tribal Labor Panel chosen pursuant to the dispute resolution provisions herein.  All questions concerning representation of the Tribe and/or Eligible Employees by a labor organization shall be resolved by the election officer.

(d)    The election officer shall certify the labor organization as the exclusive collective bargaining representative of a unit of employees if the labor organization has received the support of a majority of the

Eligible Employees in a secret ballot election that the election officer determines to have been conducted fairly. The numerical threshold for certification is fifty percent (50%) of the Eligible Employees plus one. If the election officer determines that the election was conducted unfairly due to misconduct by the Tribe and/or employer or union, the election officer may order a re-run election. If the election officer determines that there was the commission of serious Unfair Labor Practices by the Tribe, or in the event the union made the offer provided for in Section 7(b) that the Tribe violated its obligations under Section 7(c), that interferes with the election process and precludes the holding of a fair election, and the labor organization is able to demonstrate that it had the support of a majority of the employees in the unit at any time before or during the course of the Tribe's misconduct, the election officer shall certify the labor organization as the exclusive bargaining representative.

(e)     The Tribe or the union may appeal within five (5) days any decision rendered after the date of the election by the election officer to a three (3) member panel of the Tribal Labor Panel mutually chosen by both parties, provided that the Tribal Labor Panel must issue a decision within thirty (30) days after receiving the appeal.

(f)     A union which loses an election and has exhausted all dispute remedies related to the election may not invoke any provisions of this ordinance at that particular casino or related facility until one (1) year after the election was lost.

## Section 11:  Collective Bargaining Impasse

(a)     Upon recognition, the Tribe and the union will negotiate in good faith for a collective bargaining agreement covering bargaining unit employees represented by the union.

(b)     Except where the union has made the written offer set forth in Section 7(b), if collective bargaining negotiations result in impasse, the union shall have the right to strike. Strike-related picketing shall not be conducted on Indian lands as defined in 25 U.S.C. § 2703(4).

(c)     Where the union makes the offer set forth in Section 7(b), if collective bargaining negotiations result in impasse, the matter shall be resolved as set forth in Section 13(c).

## Section 12:  Decertification of Bargaining Agent

(a)     The filing of a petition signed by thirty percent (30%) or more of the Eligible Employees in a bargaining unit seeking the decertification of a certified union, will result  in a secret ballot election.  The election officer shall make a determination as to whether the required thirty percent (30%) showing has been made within one (1) working day after the submission of authorization cards.  If the election officer determines the required thirty percent (30%) showing of interest has been made, the election officer shall issue a notice of election.  The election shall be concluded within thirty (30) calendar days of the issuance of the notice of election.

(b)     The election shall be conducted by an election officer by secret ballot pursuant to procedures set forth in a consent election agreement in substantially the same form as Attachment 1.  The election officer shall be a  member of the Tribal Labor Panel chosen pursuant to the dispute resolution provisions herein.  All questions concerning the decertification of the union shall be resolved by an election officer.  The election officer shall be chosen upon notification to the Tribe and the union of the intent of the Eligible Employees to present a decertification petition, and the same election officer shall preside thereafter for all proceedings under the request for  decertification; provided however that if the election officer resigns, dies or is  incapacitated for any other reason from performing the functions of this office, a substitute election officer shall be selected in accordance with the dispute resolution provisions herein.

(c)     The election officer shall order the labor organization decertified as the exclusive  collective bargaining representative if a majority of the Eligible Employees support decertification of the labor organization in a secret  ballot election that the election officer determines to have been conducted fairly.  The numerical threshold for decertification is fifty percent (50%) of the Eligible Employees plus one (1).  If the election officer determines that the election was

conducted unfairly due to misconduct by the Tribe and/or employer or the union the election officer may order a re-run election or dismiss the decertification petition.

(d)     A decertification proceeding may not begin until one (1) year after the certification of a labor union if there is no collective bargaining agreement.  Where there is a collective bargaining agreement, a decertification petition may only be filed no more than ninety (90) days and no less than sixty (60) days prior to the expiration of a collective bargaining agreement.  A decertification petition may be filed any time after the expiration of a collective bargaining agreement.

(e)     The Tribe or the union may appeal within five (5) days any decision rendered after the date of the election by the election officer to a three (3) member panel of the Tribal Labor Panel chosen in accordance with Section 13(c), provided that the Tribal Labor Panel must issue a decision within thirty (30) days after receiving the appeal.

## Section 13:  Binding Dispute Resolution Mechanism

(a)     All issues shall be resolved exclusively through the binding dispute resolution mechanisms herein.

(b)     The method of binding dispute resolution shall be a resolution by the Tribal Labor Panel, consisting of ten (10) arbitrators appointed by mutual selection of the parties which panel shall serve all tribes that have adopted this ordinance.  The Tribal Labor Panel shall have authority to hire staff and take other actions necessary to conduct elections, determine units, determine scope of negotiations, hold hearings, subpoena witnesses, take testimony, and conduct all other activities needed to fulfill its obligations under this Ordinance.

(1)     Each member of the Tribal Labor Panel shall have relevant experience in federal labor law and/or federal Indian law with preference given to those with experience in both.  Names of individuals may be provided by such sources as, but not limited to, Indian Dispute Services, Federal Mediation and Conciliation Service, and the American Academy of Arbitrators.

(2)     One arbitrator from the Tribal Labor Panel will render a binding decision on the dispute under the Ordinance.  Five (5) Tribal Labor Panel names shall be submitted to the parties and each party may strike no more than two (2) names.  A coin toss shall determine which party may strike the first name.  The arbitrator will generally follow the American Arbitration Association's procedural rules relating to labor dispute resolution.  The arbitrator must render a written, binding decision that complies in all respects with the provisions of this Ordinance within thirty (30) days after a hearing.

(c) (1)     Upon certification of a union in accordance with Section 10 of this Ordinance, the Tribe and union shall negotiate for a period of ninety (90) days after certification.  If, at the conclusion of the ninety (90)-day period, no collective bargaining agreement is reached and either the union and/or the Tribe believes negotiations are at an impasse, at the request of either party, the matter shall be submitted to mediation with the Federal Mediation and Conciliation Service.  The costs of mediation and conciliation shall be borne equally by the parties.

(2)     Upon appointment, the mediator shall immediately schedule meetings at a time and location reasonably accessible to the parties.  Mediation shall proceed for a period of thirty (30) days.  Upon expiration of the thirty (30)-day period, if the parties do not resolve the issues to their mutual satisfaction, the mediator shall certify that the mediation process has been exhausted.  Upon mutual agreement of the parties, the mediator may extend the mediation period.

(3)     Within twenty-one (21) days after the conclusion of mediation, the mediator shall file a report that resolves all of the issues between the parties and establishes the final terms of a collective bargaining agreement, including all issues subject to mediation and all issues resolved by the parties prior to the certification of the exhaustion of the mediation process. With respect to any issues in dispute between the parties, the report shall include the basis for the mediator's determination. The mediator's determination shall be supported by the record.

(d)     In resolving the issues in dispute, the mediator may consider those factors commonly considered in similar proceedings.

(e)     Either party may seek a motion to compel arbitration or a motion to confirm or vacate an arbitration award, under this Section 13, in the appropriate state superior court, unless a bilateral contract has been created in accordance with Section 7, in which case either party may proceed in federal court.  The Tribe agrees to a limited waiver of its sovereign immunity for the sole purpose of compelling arbitration or confirming or vacating an arbitration award issued pursuant to the Ordinance in the appropriate state  superior court or in federal court. The parties are free to put at issue whether or not the arbitration award exceeds the authority of the Tribal Labor Panel.

<u>Attachment 1</u>

CONSENT ELECTION AGREEMENT PROCEDURES

Pursuant to the Tribal Labor Relations Ordinance adopted pursuant to section 10.7 of the compact, the undersigned parties hereby agree as follows:

1.      Jurisdiction.  The Sycuan Band of the Kumeyaay Nation (Tribe) is an employer within the meaning of the Ordinance; and each employee organization named on the ballot is an employee organization within the meaning of the Ordinance; and the employees described in the voting unit are Eligible Employees within the meaning of the Ordinance.

2.      Election.  An election by secret ballot shall be held under the supervision of the elections officer among the Eligible Employees of the Tribe named above, and in the manner described below, to determine which employee organization, if any, shall be certified to represent such employees pursuant to the Ordinance.

3.      Voter Eligibility.  Unless otherwise indicated below, the eligible voters shall be all Eligible Employees who were employed on the eligibility cutoff date indicated below, and who are still employed on the date they cast their ballots in the election, i.e., the date the voted ballot is received by the elections officer. Eligible Employees who are ill, on vacation, on leave of absence or sabbatical, temporarily laid off, and employees who are in the military service of the United States shall be eligible to vote.

4.      Voter Lists.  The Tribe shall electronically file with the elections officer a list of eligible voters within two (2) business days after receipt of a Notice of Election.

5.      Notice of Election.  The elections officer shall serve Notices of Election on the Tribe and on each party to the election.  The Notice shall contain a sample ballot, a description of the voting unit and information regarding the balloting process.  Upon receipt, the Tribe shall post such Notice of Election conspicuously on all employee bulletin boards in each facility of the employer in which members of the voting unit are employed.  Once a Notice of Election is posted, where the union has made the written offer set forth in Section 7(b) of the Tribal Labor Relations Ordinance, the Tribe shall continue to refrain from

publishing or posting pamphlets, fliers, letters, posters or any other communication which should be interpreted as criticism of the union or advises employees to vote "no" against the union.  The Tribe shall be free at all times to fully inform employees about the terms and conditions of employment it provides to employees and the advantages of working for the Tribe.

6.     Challenges.  The elections officer or an authorized agent of any party to the election may challenge, for good cause, the eligibility of a voter.  Any challenges shall be made prior to the tally of the ballots.

7.     Tally of Ballots.  At the time and place indicated below, ballots shall be co-mingled and tabulated by the elections officer.  Each party shall be allowed to station an authorized agent at the ballot count to verify the tally of ballots.  At the conclusion of the counting, the elections officer shall serve a Tally of Ballots on each party.

8.     Objections and Post-election Procedures.  Objections to the conduct of the election may be filed with the elections officer within five (5) calendar days following the service of the Tally of Ballots.  Service and proof of service is required.

9.     Runoff Election.  In the event a runoff election is necessary, it shall be conducted at the direction of the elections officer.

10.     Wording on Ballot.  The choices on the ballot shall appear in the wording and order enumerated below.

> FIRST:          [***]
> SECOND:     [***]
> THIRD:         [***]

11.     Cutoff Date for Voter Eligibility:  [***]

12.     Description of the Balloting Process.  A secret ballot election will take place within thirty (30) days after delivery of the voter list referenced in paragraph 4.  The employer will determine the location or locations of the polling places for the election.  There must be at least one (1) neutral location (such as a high school, senior center, or similar facility) which is not within the gaming facility and employees must also be afforded the option of voting by mail through procedures established by the elections officer.  Only voters, designated observers and the

election officer or supporting staff can be present in the polling area.  Neither employer nor union representatives may campaign in or near the polling area.  If the election officer or supporting staff questions an employee's eligibility to vote in the election, the ballot will be placed in a sealed envelope until your eligibility is determined.  The box will be opened under the supervision of the election officer when voting is finished.  Ballots submitted by mail must be received by the elections officer no later than the day of the election in order to be counted in the official tally of ballots.

13.     Voter List Format and Filing Deadline:  Not later than two (2) business days after receipt of the Notice of Election, the Tribe shall file with the elections officer, at [**address**], an alphabetical list of all eligible voters including their job titles, work locations and home addresses.

Copies of the list shall be served concurrently on the designated representative for the [***]; proof of service must be concurrently filed with elections officer.

In addition, the Tribe shall submit to the elections officer on or before [***], by electronic mail, a copy of the voter list in an Excel spreadsheet format, with columns labeled as follows: First Name, Last Name, Street Address, City, State, and Zip Code.  Work locations and job titles need not be included in the electronic file.  The file shall be sent to [***].

14.     Notices of Election:  Shall be posted by the Tribe no later than [***].

15.     Date, Time and Location of Counting of Ballots:  Beginning at [**time**] on [**date**], at the [**address**].

16.     Each signatory to this Agreement hereby declares under penalty of perjury that s/he is a duly authorized agent empowered to enter into this Consent Election Agreement.

| (Name of Party) |
| --- |
| By |
| (Title)<br>(Date) |

| (Name of Party) |
| --- |
| By |
| (Title)<br>(Date) |

| (Name of Party) |
| --- |
| By |
| (Title)<br>(Date) |

| (Name of Party) |
| --- |
| By |
| (Title)<br>(Date) |

Date approved: _____

[**Author**]
Elections Officer

Exhibit B



**LOCAL 30**
**UNITEHERE!**
San Diego County Hotel and Food Service Workers' Union

Affiliated with...

AFL-CIO
San Diego and Imperial Counties Labor Council
State Federation of Labor
State Culinary Alliance
Union Label & Service Trades Council

November 2, 2019

Chairman Cody J. Martinez
Sycuan Band of Kumeyaay Nation
Sycuan San Diego Casino Resort
5469 Casino Way
El Cajon, CA 92019

**RE: Notice of Intent to Organize**

Dear Chairman Martinez:

Pursuant to Section 7 of the Tribal Labor Relations Ordinance, UNITE HERE Local 30 provides this notice of intent to organize.  We will comply with Subsections 7(b)(1) and (b) of the TLRO.  In exchange, the Tribe must do two things immediately.

Section 7(c)(1) gives the Tribe two days to provide us with an employee list that includes employees' last known addresses, telephone numbers and email addresses.  Please send the list to Joe Bagby at jbagby@unitehere.org.  If possible, please provide the list in excel format.

Section 7(c)(2) requires the Tribe "not act in any way which is or could reasonably be perceived to be anti-union.  This includes refraining from making derisive comments about unions; publishing or posting pamphlets, fliers, letters, posters or any other communication which should be interpreted as criticism of the union or advises Eligible Employees to vote 'no' against the union."  We expect that the Tribe will comply with this obligation.

Sincerely,

Brigette Browning
President
UNITE HERE Local 30

**B-1**

Exhibit C



**LOCAL 30**
**UNITEHERE!**
San Diego County Hotel and Food Service Workers' Union

Affiliated with...

AFL-CIO
San Diego and Imperial Counties Labor Council
State Federation of Labor
State Culinary Alliance
Union Label & Service Trades Council

November 2, 2019

Chairman Cody J. Martinez
Sycuan Band of Kumeyaay Nation
Sycuan San Diego Casino Resort
5469 Casino Way
El Cajon, CA 92019

**RE: Casino Access**

Dear Chairman Martinez:

Section 8(a) of the Tribal Labor Relations Ordinance requires the Tribe to give our union access to the casino so that we can organize your employees. We are entitled to enter non-work areas that are designated as employee break rooms or locker rooms that are not open to the public where we may communicate with employees when they are not working. We will not interfere with patronage of the casino or employees' normal work routines.

Please contact Joe Bagby at 619-855-5567 to schedule a time to discuss our visits.

Sincerely,

Brigette Browning
President
UNITE HERE Local 30

**C-1**

Exhibit D



**LOCAL 30**
**UNITEHERE!**
San Diego County Hotel and Food Service Workers' Union

Affiliated with...

AFL-CIO
San Diego and Imperial Counties Labor Council
State Federation of Labor
State Culinary Alliance
Union Label & Service Trades Council

November 2, 2019

Chairman Cody J. Martinez
Sycuan Band of Kumeyaay Nation
Sycuan San Diego Casino Resort
5469 Casino Way
El Cajon, CA 92019

**RE: Posting Union Information**

Dear Chairman Martinez:

Section 8(d) of the Tribal Labor Relations Ordinance requires the Tribe to facilitate our union's dissemination of information to employees at the casino by allowing us to post posters, leaflets and other written materials in non-public employee break areas where the Tribe already posts announcements for employees.

Please contact Joe Bagby at 619-855-5567 to schedule a time to discuss the appropriate locations for our postings.

Sincerely,

Brigette Browning
President
UNITE HERE Local 30

2436 Market Street, San Diego, CA 92102 • (619) 516-3737 • Fax (619) 516-1383 • Local30@unitehere.org
*Together, We Will Make a Difference*

**D-1**

Exhibit E



**Sycuan Legal Deparment**

November 6, 2019

Bridget Browning
UNITE HERE Local 30
2436 Market Street
San Diego, CA 92102
bbrowning@unitehere.org

[Sent Via: U.S. Mail & Email]

Re: UNITE HERE Local 30 Intent to Organize, Access and Posting

     I am the General Counsel for the Sycuan Band of the Kumeyaay Nation and am responding to your correspondence to Chairman Cody Martinez dated November 2, 2019. Unfortunately, the letters were transmitted to an incorrect email address on a weekend. For purposes of responding, we are treating the three letters as if they were delivered on the first business day, which was Monday, November 4, 2019.

     As you may know, recent federal court decisions have held that the National Labor Relations Act preempts state law with respect to union organizing and, in this instance, could apply to tribal gaming property on federal lands. Setting that issue aside with a reservation of rights, the tribe consolidates its response to your three letters: (1) Notice of Intent to Organize and Request for Employee's Private Contact Information; (2) Request to Post Leaflets and Written Materials on Casino Property; and (3) Access to the Back of House and Employee Break Rooms.

     Pursuant to Section 3 of Sycuan's Tribal Labor Relations Ordinance (TLRO), the Sycuan Gaming Commission (SGC) is charged with regulating the gaming operation, including any union access or organizational efforts. That section dictates that the exercise of any rights under the TLRO cannot interfere with the Tribe's gaming operation and the casino's internal controls. The SGC regulates all aspects of the casino, including the back of house and restricted employee non-work areas. Pursuant to Section 8 of the TLRO, the Tribe and SGC may require the UNITE HERE union to be subject to the same licensing rules applied to individuals for access to restricted areas. Similarly, Sycuan is mindful of its employees' privacy rights and that a roster of names and addresses cannot be generally distributed to an unlicensed vendor or entity without oversight and direction from the SGC.

**E-1**

Response Letter to UNITE HERE
November 6, 2019
Page 2 of 2


For the foregoing reasons, Sycuan cannot allow the union access to the restricted areas, to post materials in non-work areas, or access to the employees' private contact information *until* the union has procured the appropriate licenses from SGC. We are optimistic that you can obtain the appropriate credentials in short order, at which time we can respond to the three requests.




Sincerely,

Mark A. Radoff
Sycuan General Counsel


cc:  Sycuan Tribal Council
     Adam Day, CAO
     Maureen Kerr, VP Human Resources
     Ed Magdaleno, SGC Assistant Executive Director


**E-2**

Exhibit F

McCRACKEN, STEMERMAN & HOLSBERRY, LLP

Counselors and Attorneys at Law

**San Francisco**

595 Market Street, Suite 800
San Francisco, CA  94105
415.597.7200
Fax 415.597.7201

Steven L. Stemerman (CA, NV)
Richard G. McCracken (CA, NV)
W. David Holsberry (CA, NV)
John J. Davis (CA)
Kristin L. Martin (CA, NV, HI)
Eric B. Myers (CA, NV)
Paul L. More (CA, NV, MA)
Sarah Varela (CA, AZ, NV)
Sarah Grossman-Swenson (CA, NV)
Kimberly Hancock (CA)
David L. Barber (CA, NV)
Kimberley C. Weber (CA, NV)
A. Mirella Nieto (CA)
Richard Treadwell (CA)
Kara Maddalena (CA)

Robert P. Cowell (1931-1980)

Philip Paul Bowe (CA) (Ret.)
Barry S. Jellison (CA) (Ret.)

**Las Vegas**

1630 Commerce Street, Suite A-1
Las Vegas, NV  89102
702.386.5107
Fax 702.386.9848

November 7, 2019

**_Via Electronic Mail and U.S. Mail_**

Mark Radoff, Sycuan General Counsel
Sycuan Band of Kumeyaay Nation
2 Kwaaypaay Court
El Cajon, CA  92019

    RE:    UNITE HERE Local 30 and Sycuan Band of Kumeyaay Nation

Dear Mr. Radoff:

    I represent UNITE HERE Local 30.  I write in response to your letter dated November 6, 2019 to Local 30 President Brigette Browning.  I will address each of the issues in the order that you raise them.

    The Tribal Labor Relations Ordinance is not preempted, and no federal court has said otherwise.  The TLRO has been addressed in three federal appeal court opinions – twice by the Ninth Circuit and once by the D.C. Circuit – and none said that it is preempted.  *See Casino Pauma v. NLRB*, 888 F.3d 1066, 1079 (9th Cir. 2018); *San Manuel Indian Bingo & Casino*, 475 F.3d 1306, 1317-18 (D.C. Cir. 2007); *In re Indian Gaming Related Cases*, 331 F.3d 1094, 1115-16 (9th Cir. 2003).  The Supreme Court declined to review the Ninth Circuit's decision in *Casino Pauma*, and no other appeals court will address the question.  Moreover, Local 30's notice of intent to organize created a bilateral contract with the Tribe.  It is common for unions and employers to enter into agreements about the procedures for organizing a union recognition, and such agreements are enforceable in federal court.  *See, e.g.*, *Service Employees Int'l Union v. St. Vincent Medical Ctr.*, 344 F.3d 977, 979 (9th Cir. 2003); *Hotel Employees & Restaurant Employees Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1466 (9th Cir. 1992); *United Steel, Paper, etc. v. TriMas Corp.*, 531 F.3d 531, 533 (7th Cir. 2008); *Hotel & Restaurant Employees Union Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 564-65 (2d Cir. 1993).

**F-1**

McCRACKEN, STEMERMAN & HOLSBERRY, LLP

Mark Radoff, Sycuan General Counsel
November 7, 2019
Page 2 of 3

Local 30 does not object to reasonable and efficient licensing procedures as a condition of its representatives entering nonpublic areas of the casino.  We expect that the Tribe will not use licensing as a pretext to interfere with Local 30's efforts.

Contrary to what you say, licensing is <u>not</u> a condition of posting information or receiving an employee list.  Another tribe already made that argument unsuccessfully in connection with the TLRO's posting provision.  Arbitrator Raul Ramirez rejected the argument because it is not what the TLRO says, and he described that tribe's purported security concerns in connection with posting information as "frivolous."  A copy of the arbitration decision is enclosed.  As the TLRO states, actual posting will be done by Sycuan employees.

Your argument about employee privacy rights also lacks support.  Federal law actually requires such disclosures when an NLRB-supervised election is involved.  Since 1966, the NLRB has required employers to give a union that asks for an election a list of employees' names and home addresses, *Excelsior Underwear, Inc.*, 156 NLRB 1236, 1239-40 (1966); and the Supreme Court has approved of this requirement.  *NLRB v. Wyman-Gordon Co*., 394 U.S. 759 (1969).  The NLRB has also required employers to provide that employees' names and contact information as a remedy for the employer's unfair labor practices.  *Excel Case Ready*, 334 NLRB 4, 5 (2001); *Charlotte Amphitheater Corp.*, 331 NLRB 1274, 1275 (2000).  Nor does an employer violate the NLRA when it voluntarily provides this information to a union.  *A-Plus Roofing, Inc.*, 295 NLRB 967, 974 (1989) (rejecting as "frivolous" employer's claim that California privacy law prevented employer from giving union employees' home addresses); *Tenet Healthcare (Los Gatos Hospital)*, 2005 WL 545233, at *10-11 (G.C. Mem. February 23, 2005) ("[W]e find the provision requiring the Employer to provide the Union with a list of names and addresses to be lawful.").  State courts have also rejected the argument that state privacy laws preclude giving a union employee addresses.  *County of Los Angeles. v. L.A. ERCOM*, 56 Cal.4th 905, 933 (2013) ("On balance, we conclude [that the union's] interest in communicating with all County employees significantly outweighs nonmembers' interest in preserving the privacy of their contact information."); *Carian v. ALRB*, 36 Cal.3d 654, 673-74 (1984) ("Nor can the employer's conduct be justified by a claim that he was acting in the interests of his employees, to protect their privacy.  A similar argument — that to provide the union with employee names and addresses subjects employees to the dangers of harassment and coercion in their homes — was rejected by the NLRB in its *Excelsior* opinion."); *Tobin v. Civil Service Comm.,* 416 Mich. 661, 672-78 (1982) (rejecting argument that providing union names and home addresses for organizing purposes violated privacy interests, explaining that "[n]ames and addresses are not ordinarily personal, intimate, or embarrassing pieces of information.  The supposed right to keep such information secret is at best riddled with exceptions.").

I reiterate Local 30's request for a list and expect that it will be provided immediately.  If the Tribe has any further objections to complying with its obligations under the TLRO or its

McCRACKEN, STEMERMAN & HOLSBERRY, LLP

Mark Radoff, Sycuan General Counsel
November 7, 2019
Page 3 of 3

bilateral contract with Local 30, please address them to me.  If not, I expect that it would be more
productive for our clients to continue to communicate directly about the organizing process.

   Thank you for your attention.

         Sincerely,

         Kristin L. Martin

Cc: Brigette Browning

**F-3**

Enclosure

1  Judge Raul A. Ramirez (Ret)
   3600 American River Drive
2  Suite 145
   Sacramento, California 95864
3  (916) 488-4050
   (916)488-3269
4

ORIGINAL

5

6                              **ARBITRATION**

7

8  In the matter of the dispute between,  )
   HOTEL EMPLOYEES and                    )
   RESTAURANT EMPLOYEES                    )      **FINAL AWARD**
9  INTERNATIONAL UNION                     )
   AFL-CIO,                                )
10                                         )
                Petitioner,                )
11                                         )
12 v.                                      )
                                           )
13                                         )
   AGUA CALIENTE BAND OF                   )
14 CAHUILLA INDIANS,                       )
                                           )
15             Respondent.                 )
16

17

18         The above-entitled matter came on for Binding Arbitration before the undersigned

19 on February 11, 2004 at 10 AM. Kristin L. Martin, Esq. appeared as counsel for petitioner,

20 Hotel Employees and Restaurant Employees International Union AFL-CIO, (hereinafter

21 Union).  Art Bunce, Esq. appeared as counsel for respondent, Agua Caliente Band of

   Cahuilla Indians, (hereinafter Tribe).
22
           Having considered the respective arguments of counsel and having reviewed the
23
   evidence adduced at trial as well as the pre-trial briefs, background documents and
24
   supplemental materials supplied by the parties, the Arbitration renders the following binding
25
   decision: [1]
26

27 _____

           [1]As promised, the Arbitrator has attempted to be brief and issue a decision which
28 sets forth the rationale of the Arbitrator in the most simplistic terms.

1  **BACKGROUND:**

2     The Indian Gaming Regulation Act (IGRA) 25 U.S.C. §2701 et seq requires states

3  and tribes located within states where gaming is permitted to enter into a Tribal-State

4  Compact which will govern all gaming activities conducted by Indian tribes on Indian lands.

5     Pursuant to IGRA, the Tribe entered into a Tribal-State Compact with the State of

6  California wherein the Tribe agreed to provide "an agreement or other procedure

7  acceptable to the State for addressing organizational and representational rights of gaming

8  employees."

9     On October 11, 1999, the Tribe adopted the Tribal Labor Relations Ordinance

10  (hereinafter Ordinance) which gave gaming employees of tribal casinos the right to

11  organize, form a union and bargain collectively.  A review of pertinent sections of

12  the Ordinance will assist to clarify the issue now presented to the Arbitrator.

13     Section 8, entitled Access to Eligible Employees at subparagraph (a)

14  provides:

15         (a) Access shall be granted to the union for the purposes of
           organizing Eligible Employees, provided that such organizing
16         activity shall not interfere with patronage of the casino or
           related facility or with the normal work routine of the Eligible
17         Employees and shall be done on non-work time in non-work
           areas that are designated as employee break rooms or locker
18         rooms that are not open to the public.  The tribe may require
           the union and or union organizers to be subject to the same
19         licensing rules applied to individuals or entities with similar
           levels of access to the casino or related facility, provided that
20         such licensing shall not be unreasonable, discriminatory, or
           designed to impede access. (Emphasis added)
21
         Section 8, subparagraph (e) provides:
22
         (e) The tribe agrees to facilitate the dissemination of
23         information from the union to Eligible Employees at the tribal
           casino by allowing posters, leaflets and other written materials
24         to be posted in non-public employee break areas where the
           tribe already posts announcements pertaining to Eligible
25         Employees. Actual posting of such posters, notices, and other
           materials, shall be by employees desiring to post such
26         materials. (Emphasis added)

27

28                            Page -2

F-6

Finally, Section 13 of the Ordinance provides a binding dispute resolution mechanism whereby disputes of the present nature are decided pursuant to a three level system of hearings. Level one is directed to a "designated tribal forum" i.e. a Tribal Council, Business Committee or Grievance Board. Level two is directed to the "Tribal Labor Panel" – a state-wide panel consisting of one or three Arbitrators[2]. A level three hearing is relegated to confirmation of the Tribal Labor Panel's Arbitration Award. A motion to confirm may be directed to the appropriate Tribal Court or, if none, to the federal court or state court if the federal court declines jurisdiction. It is within this context of dispute resolution procedure that the instant matter now comes before the Arbitrator for decision.

**FACTS:**

On August 1, 2003, five employees of the Agua Caliente Band's Spa Resort and Casino requested permission from the Human Resources Manager to post union flyers in non-public employee break areas of the workplace.

On August 15, 2003, the Tribe denied the request to post citing the registration requirements of the Ordinance as well as Ordinance No. 29.[3] In brief, the Tribe took the position that Rule 1 of Ordinance No. 29 required that "in order to commence organizing on the Reservation, an <u>Employee Organization</u> must first register with the Board." (Emphasis added)

In response to the August 15, 2003 rejection, the Union initiated a complaint and requested binding dispute resolution pursuant to section 13 of the Ordinance. Pursuant to that demand, the dispute has now gone to level one hearing where the panel found that the Tribe did not violate the Ordinance, Ordinance No. 29, or the Rules and Regulations

---

[2]This Arbitrator is a member of the Tribal Labor Panel, a permanent panel of ten arbitrators whose function is to decide disputes such as the one presented herein.

[3]Ordinance No. 29 was enacted on May 16, 2000 for the purpose of adopting the aforementioned Tribal Labor Relations Ordinance. Suffice it to say, nothing in Ordinance No. 29 is meant to supersede or otherwise amend the written word of the original Ordinance.

Page -3

F-7

1 | promulgated under Ordinance No. 29.

2 | **Issue:**

3 |     Whether the Tribe violated Section 8(e) of the Tribal Labor Relations Ordinance by

4 |     its reply letter of August 15, 2003.

5 | **Discussion:**

6 |         I

7 |     At the outset, the Arbitrator must determine the appropriate scope of review i.e.

8 | whether the Arbitrator sits in a purely appellate position, (bound by the record

9 | established at the level one hearing), or whether the Arbitrator may conduct a de novo

10 | review of the evidence.[4]

11 |     The Arbitrator opts for the latter, not the former.  Section 13 (c) of the Ordinance

12 | specifically allows a member of the Tribal Labor Panel at level two proceeding to ..."hold

13 | hearings, subpoena witnesses, take testimony and conduct all other activities needed to

14 | fulfill its obligations under this Tribal Labor Relations Ordinance."  Certainly the holding

15 | of a hearing and the taking of testimony presupposes the ability to go beyond the

16 | record established at the level one proceeding.

17 |     Finally, both the Union and Tribe have agreed to follow the American Arbitration

18 | Association's protocol for labor dispute resolution (Section 13(c)(2).) Such protocol

19 | contemplates a de novo review of the orderly presentation of testimony, evidence and

20 | other relevant material to assist the Arbitrator in reaching a learned decision.  Based on

21 | the foregoing, the Arbitrator will decide the ultimate issue by way of de novo review of

22 | all evidence timely submitted.

23 |

24 |

25 |     [4]Although the parties originally stipulated that the Arbitrator must "base his decision on evidence presented in the first level of binding dispute resolution..."that

26 | stipulation was quickly ignored when counsel for the Tribe requested and was granted permission to present witnesses and evidence on the issue of Union access.  Based on

27 | that ruling, the Arbitrator feels a need to clarify the issue.

28 | Page -4

**II**

Although the Arbitrator has been presented with arguments stressing issues dealing with free speech, security concerns, unfettered access to casinos, sovereignty of Tribes, etc., the real issue presented for decision is the unambiguous meaning of the provisions contained in Section 8(a) and (e) of the Tribal Labor Relations Ordinance. A second review of those provisions will prove insightful.

Section 8(a) specifically refers to <u>access</u> "granted to the <u>union</u> for the purposes of organizing Eligible Employees..." Subsection (a) concludes by making reference to the ability of the Tribe to "require the <u>union</u> and or <u>union organizers</u> to be subject to the same licensing rules..."

Section 8(e), on the other hand, does not refer to the activity defined as "access" but instead makes reference to the dissemination of information by conduct otherwise referred to as "posting...by <u>employees</u>." In fact, the term "access" is nowhere to be found in Section 8(e).

When the two sections are read together in a common sense fashion and with an eye towards implementing the written word of an agreement negotiated at arms length by two sovereigns, namely, the Tribe and the State of California, the following is apparent:

> a). Section 8(a) applies to access by the union or union organizers;
> b). Even Rule 1 of Ordinance No. 29 applies to an employee organization;
> c). Section 8(e) applies to posting by employees;

The Arbitrator finds that the mere posting of information by employees of the Tribe does not run afoul of the licensing requirements of Section 8(a). Since the persons seeking to post are already employed by the Tribe, the concerns dealing with security and unfettered access to the casino are frivolous. Likewise, since it was the Tribe itself which

F-9

1   negotiated the specific provisions of the Ordinance (a rule which differentiates between
2   access and posting on the one hand and union, union organizers, employee organizations
3   and eligible employees on the other), it cannot be said that the decision of the Arbitrator
4   somehow dilutes Tribal sovereignty.

5   Even assuming the issue of access versus posting was a close call, (which it is not)
6   the Arbitrator would find in favor of the Union on the basis that physical access is not an
7   issue; mere dissemination of information does not equate to actual organization; the Tribe
8   itself bargained the written word; the written word specifically set forth different criteria for
9   access and posting - an acknowledgment that one may require regulation while the other
10  does not.

11  **Award:**

12  For the reasons as set forth herein, the Arbitrator finds that Section 8(e) of the
13  Ordinance does not require licensure where Eligible Employees seek to post informational
14  materials dealing with union membership or the rights of employees to bargain collectively.

15  Furthermore, the Arbitrator finds that to ensure full and fair disclosure of the
16  findings, the Final Award shall be posted in all regularly used non-public employee break
17  areas where the Tribe already posts announcements pertaining to employees. The
18  posting shall continue uninterrupted for a period of sixty days.

21  So Ordered
22  March 3, 2004

Judge Raul A. Ramirez (Ret.)
Arbitrator

28  Page -6

Exhibit G



**Sycuan Legal Deparment**

November 14, 2019

**VIA E-MAIL AND U.S. MAIL**

Kristin L. Martin
McCracken, Stemerman & Holsberry, LLP
595 Market Street, Suite 800
San Francisco, California 94105
klm@msh.law

Re:   UNITE HERE Local 30 and Sycuan Band of Kumeyaay Nation

Dear Ms. Martin,

The purpose of this correspondence is to summarize the position of the Tribe, as discussed in our telephone conference this morning (and to reply to your November 7, 2019 correspondence), regarding the "NOIO" filed by the Union on November 4, 2019. Please consider the following:

## NATIONAL LABOR RELATIONS ACT PREEMPTION

As noted, the Tribe has not taken the position that the TLRO is unenforceable as the result of National Labor Relations Act (NLRA) preemption. However, the cases cited in your November 7th letter, in particular *Casino Pauma v. NLRB*, 888 F.3d 1066, 1079 (9th Cir. 2018) and *San Manuel Indian Bingo & Casino*, 475 F.3d 1306, 1317-18 (D.C. Cir. 2007), support the contention that the TLRO is preempted by the NLRA. In both those cases, the reviewing courts rejected the idea that the National Labor Relations Board (NLRB) should defer to the applicable tribal TLROs at issue. The State of California, by conditioning the entering into of a Tribal State Compact, upon the inclusion of the TLRO, acted unlawfully. See *Chamber of Commerce of the United States v. Brown*, 554 U.S. 60 (2008); and, *Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608 (1986).

Also, the so-called "bilateral contract" would be invalid if the ordinance is preempted. Additionally, the bilateral contract procedure standing along is highly questionable under basic contract law.

## RIGHT TO PRIVACY

As to the right of privacy issue, as you are fully aware under the NLRA (and the 1999 TLRO), an "excelsior list" is not provided to a petitioning labor organization unless

**G-1**

Kristin L. Martin
November 14, 2019
Page 2 of 2

and until the NLRB has received a petition accompanied by at least a thirty percent (30%) showing of interest. Under the NOIO, the Union gets the list without any evidence of employee support whatsoever. And, your citation of *County of Los Angeles. v. L.A. ERCOM*, 56 Cal.4th 905, 933 (2013) is also inapplicable. In that case, the privacy issue was raised by employees who were already represented by an existing bargaining representative. The case is complete with references to the union having the right to obtain employee contact information from employees that it represents. There is no evidence that UNITE HERE represents any Sycuan employees. The Supreme Court decision in *Carian v. ALRB*, 36 Cal.3d 654, 673-74 (1984) is also inapplicable factually, as the case involved California agriculture, where the California Agricultural Labor Relations Board (ALRB) / California courts have continually held that the unique circumstances of California agriculture and the transitory nature of employees justifies the differences from the model followed under the NLRA.

Bottom line, there is a legitimate right to privacy concern for employees under these circumstances, to have their contact information released when, as noted, there is no evidence of employee support for UNITE HERE.

With respect to employees posting materials, as I indicated, the Tribe will review posting locations. The Tribe recognizes the differences between employee and non-employee organizers and will afford access where employees post materials, if such location exists.

## CONCLUSION

Hopefully we can reach a resolution of our differences and resolve these issues without resorting to arbitration / litigation. Thank you for your cooperation.

Respectfully,

Mark A. Radoff
General Counsel
Sycuan Band of Kumeyaay Nation

cc: Sycuan Tribal Council

**G-2**

Exhibit H

**McCRACKEN, STEMERMAN & HOLSBERRY, LLP**

Counselors and Attorneys at Law

**San Francisco**

595 Market Street, Suite 800
San Francisco, CA 94105
415.597.7200
Fax 415.597.7201

Steven L. Stemerman (CA, NV)
Richard G. McCracken (CA, NV)
W. David Holsberry (CA, NV)
John J. Davis (CA)
Kristin L. Martin (CA, NV, HI)
Eric B. Myers (CA, NV)
Paul L. More (CA, NV, MA)
Sarah Varela (CA, AZ, NV)
Sarah Grossman-Swenson (CA, NV)
Kimberly Hancock (CA)
David L. Barber (CA, NV)
Kimberley C. Weber (CA, NV)
A. Mirella Nieto (CA)
Richard Treadwell (CA)
Kara Maddalena (CA)


Robert P. Cowell (1931-1980)


Philip Paul Bowe (CA) (Ret.)
Barry S. Jellison (CA) (Ret.)


**Las Vegas**

1630 Commerce Street, Suite A-1
Las Vegas, NV 89102
702.386.5107
Fax 702.386.9848

November 15, 2019

**_Via Electronic Mail_**

Mark Radoff, Sycuan General Counsel
Sycuan Band of Kumeyaay Nation
2 Kwaaypaay Court
El Cajon, CA 92019

RE:     UNITE HERE Local 30 and Sycuan Band of Kumeyaay Nation

Dear Mr. Radoff:

I write in response to your letter dated November 14, 2019, and our conversation of the same date. For the reasons that I explain below, I will contact AAA to request a panel of arbitrators from which we may select one to resolve our clients' dispute. I will copy you on that communication.

Thank you for clarifying that the Tribe is <u>not</u> taking the position that the TLRO is unenforceable as a result of NLRA preemption. Since you apparently no longer intend to raise that issue, it is unnecessary to discuss this subject further.

Thank you also for conceding that the Tribe may not condition Section 8 posting rights on licensing. We continue to have a dispute over the Section 7 right to an employee list within two days of the notice of intent to organize. You offered to provide the list of employee names, but withhold the addresses, email addresses and phone numbers required by Section 7. We suggest that you provide the names immediately since you have no defense for not doing so. We will ask the arbitrator whether you must provide the other information and, if so, the remedy for the failure to do so within two days of Local 30's notice of intent to organize, which it submitted on November 2, 2018.

You are correct that the Tribe has responded to Local 30's request for a license so that its representatives may access the casino. The Tribe did not do so expeditiously, and it appears that the Tribe is now putting up hurdles which will make it more difficult for Local 30 to be licensed. Local 30 will contact the administrator at the tribal gaming commission to try to work out these issues,

**H-1**

McCRACKEN, STEMERMAN & HOLSBERRY, LLP

Mark Radoff, Sycuan General Counsel
November 15, 2019
Page 2 of 2

but if the administrator takes an unreasonable or inflexible position, we reserve the right to raise the licensing and access issues in the arbitration proceeding.

Another issue has been brought to my attention.  On November 13, the Tribe put out a notice in which it told employees that the only places where employees may speak about union matters is the Team Member Dining Room and the Team Member Break Room.  That is incorrect.  Off-duty employees have the right to talk about union matters and engage in other organizing activities in other nonwork areas such as the smoking area and the parking garage.  On-duty employees have right to talk about union matters when they are working to the same extent they are permitted to talk about other nonwork matters.  This right exists, both under the NLRA (which you cite as applying to the casino) and under the TLRO.  Accordingly, we ask that the Tribe rescind its November 13 memo, and notify employees by the same method that they may in fact talk about union matters while working and in all nonwork areas while off-duty.  If that is not done immediately, we will also raise this issue in the arbitration proceeding.

Thank you for your attention.

Sincerely,

Kristin L. Martin

Cc: Brigette Browning

**H-2**

Exhibit I

## McCRACKEN, STEMERMAN & HOLSBERRY, LLP

### Counselors and Attorneys at Law

**San Francisco**

595 Market Street, Suite 800
San Francisco, CA  94105
415.597.7200
Fax 415.597.7201

Steven L. Stemerman (CA, NV)
Richard G. McCracken (CA, NV)
W. David Holsberry (CA, NV)
John J. Davis (CA)
Kristin L. Martin (CA, NV, HI)
Eric B. Myers (CA, NV)
Paul L. More (CA, NV, MA)
Sarah Varela (CA, AZ, NV)
Sarah Grossman-Swenson (CA, NV)
Kimberly Hancock (CA)
David L. Barber (CA, NV)
Kimberley C. Weber (CA, NV)
A. Mirella Nieto (CA)
Richard Treadwell (CA)
Kara Maddalena (CA)

Robert P. Cowell (1931-1980)

Philip Paul Bowe (CA) (Ret.)
Barry S. Jellison (CA) (Ret.)

**Las Vegas**

1630 Commerce Street, Suite A-1
Las Vegas, NV  89102
702.386.5107
Fax 702.386.9848

November 15, 2019

***Via Electronic Mail (TatumP@adr.org)***

Patrick Tatum, Vice President
American Arbitration Association
45 E River Park Place West, Suite 308
Fresno, CA 93720

Re:  Tribal Labor Panel

Dear Mr. Tatum:

The Sycuan Band of Kumeyaay Nation and UNITE HERE Local 30 have a dispute over multiple violations by the Tribe of its Tribal Labor Relations Ordinance, including sections 5, 7 and 8.  Local 30 requests a panel of five arbitrators on the Tribal Labor Panel from which an arbitrator may be chosen. The Sycuan Band of Kumeyaay Nation is represented by:

Mark Radoff, Sycuan General Counsel
Sycuan Band of Kumeyaay Nation
2 Kwaaypaay Court
El Cajon, CA  92019
MRadoff@sycuan-nsn.gov

Thank you for your attention.

Sincerely,

Kristin L. Martin

Cc:  Mark Radoff
Brigette Browning

**I-1**

Exhibit J

-----Original Message-----
From: Mark Radoff [mailto:MRadoff@sycuan-nsn.gov]
Sent: Tuesday, December 03, 2019 10:05 PM
To: JeffreyKriegsman@adr.org
Cc: Kristin Martin
Subject: Re: Monthly Statement for AAA Case 01-19-0004-0615

Mr. Kriegsman:


Thank you for forwarding the invoice. However, please note that Sycuan will not be participating in the Tribal Labor
Panel arbitration. It is our position that the TLRO has been preempted by the NLRA and for that reason the tribe does
not recognize the dispute resolution process contained therein, and cannot consent to commencing the process
initiated by Unite HERE. We will be sending a more detailed response to legal counsel for the union which, I assume will
open a dialogue. In the interim we do not want, or authorize AAA to incur costs or fees on behalf of Sycuan.


Thank you for your consideration,


-Mark Radoff


[cid:Sycuan-Logo_83635084-9765-42d7-91ae-6eccae9545e0111.png]

<http://sycuan.com/>

**J-1**

Mark Radoff
General Counsel
Sycuan Tribal Government | Legal Department
2 Kwaaypaay Ct. | El Cajon, CA | 92019
Phone: 619-445-4564 Ext: 1052 Direct: 619-659-1022 Mobile: 760-920-8010 Fax: 619-445-0238| Email:
mradoff@sycuan-nsn.gov<mailto:mradoff@sycuan-nsn.gov>
http://www.sycuantribe.com
http://www.sycuan.com
http://www.singinghillsgolfresort.com

_____

[cid:Facebook_3540560b-8c99-40a4-9997-6b4548fe31a8111.png]<https://www.facebook.com/sycuancasinoresort/>
[cid:Twitter_c3c37dbf-796d-4346-a3fb-7f4f3d9803b8111.png] <https://twitter.com/SycuanCasino>
[cid:Instagram_72878e6f-e67d-4c82-9968-76a180b25629111.png] <https://www.instagram.com/sycuan_casinoresort/>
[cid:Youtube_ecb767d8-6bd6-45f9-8c21-bfcf2538a970111.png]
<https://www.youtube.com/user/sycuancasinosandiego/>
The information in this e-mail message is intended for the confidential use of the addressees only. The information is
subject to attorney-client privilege and/or may be attorney work product. Recipients should not file copies of this e-mail
with publicly accessible records. If you are not an addressee or an authorized agent responsible for delivering this e-mail
to a designated addressee, you have received this e-mail in error, and any further review, dissemination, distribution,
copying or forwarding of this e-mail is strictly prohibited. If you received this e-mail in error, please notify us
immediately at (619) 445-4564. Thank you.

_____

From: JeffreyKriegsman@adr.org <JeffreyKriegsman@adr.org>
Sent: Sunday, December 1, 2019 11:09 PM
To: Mark Radoff
Subject: Monthly Statement for AAA Case 01-19-0004-0615

Attached, please find a statement reflecting the current balance due for the above-referenced case.

These statements are automatically generated, and sent, on a monthly basis for those accounts with any balance due.
To help facilitate your payment, please use the following link that will take you to our Quick Pay option. You will need
the Case Number and the Pay Pin (located on the bottom left hand portion of the attached statement).

https://www.adr.org/PayOnline

Thank you and please contact us if you have any questions regarding this statement, or charges due.

[Logo]
AAA Jeffrey Kriegsman

J-2

Case Administrator III
American Arbitration Association

T: 212 484 3241  F: 212 307 4387  E: JeffreyKriegsman@adr.org<mailto:JeffreyKriegsman@adr.org>
120 Broadway, 21st Floor, New York, NY 10271 adr.org<https://www.adr.org> | icdr.org<https://www.icdr.org> |
aaamediation.org<https://www.aaamediation.org>
[cid:imaged36cf2.JPG@79dad258.4ca926ee]


The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**J-3**

Exhibit K



Sycuan Legal Deparment

December 12, 2019

**VIA E-MAIL AND U.S. MAIL**

Kristin L. Martin
McCracken, Stemerman & Holsberry, LLP
595 Market Street, Suite 800
San Francisco, California 94105
klm@msh.law

Re:     UNITE HERE Local 30 and Sycuan Band of the Kumeyaay Nation /
        NLRA Preemption of Tribal Labor Relations Ordinance

Dear Ms. Martin,

As you are aware, in 2015 the Sycuan Band of the Kumeyaay Nation (hereinafter, the "Tribe") entered into a "Tribal State Compact" with the State of California. The Compact contained as an addendum, a "Tribal Labor Relations Ordinance" (TLRO) which created a mechanism for unions to organize employees at the Sycuan Casino Resort. The TLRO included a "Notice of Intent to Organize Employees" (NOIO), which invokes certain procedures for a union to undertake organizing, including employer neutrality and the providing of a list of employees' contact information.

### SEQUENCE OF EVENTS

UNITE HERE Local 30 invoked the NOIO process on or about November 4, 2019. Sycuan responded on November 4, 2019 advising UNITE HERE of the National Relations Labor Act (NLRA) preemption of state law, and of the Sycuan Gaming Commission's (SGC) licensing rules. In response, the union objected in correspondence that SGC licensing was not a condition to post information inside the casino employee areas, nor to obtain employees' private home addresses. Shortly thereafter, you and I discussed the issues by phone. On November 14, 2019, the undersigned corresponded with you, raising issues as to the validity of this entire process. Then on November 15, 2019, you contacted the American Arbitration Association (AAA) seeking to commence arbitration proceedings as to alleged violations of the TLRO by the Tribe due to the SGC requirements and disclosure of employees' confidential contact information. After Sycuan was invoiced by AAA for the arbitration, on December 4, 2019, the undersigned notified AAA via email

K-1

Letter to Kristin L. Martin
December 12, 2019
Page 2 of 2

that it believes this entire process to be preempted by federal law and that the Tribe would
not comply with the arbitration request.

### LEGAL POSITION OF THE TRIBE

By this correspondence, I wish to confirm that the Tribe's legal position is that the
TLRO is preempted by the National Labor Relations Act (NLRA) and is therefore null and
void; and the Tribe has no obligation to comply with it. The Tribe has considered its
position very carefully and is particularly aware that after the TLRO was entered into in
2015, the Ninth Circuit decided *Casino Pauma v. NLRB*, 888 F.3d 1066 (9th Cir. 2018),
establishing without question that the NLRA applied to the commercial operations of an
Indian tribe such as Sycuan Casino Resort.

Finally, Sycuan Casino Resort recognizes the rights of its employees to organize
unions and/or otherwise engage in protected concerted activities. However, it is the
position of the Tribe that such activity must occur pursuant to the NLRA as opposed to the
TLRO.

### CONCLUSION

I hope this correspondence clarifies the Tribe's position. Please contact the
undersigned should you wish to discuss.

Respectfully,

Mark A. Radoff
General Counsel
Sycuan Band of Kumeyaay Nation

cc:     Sycuan Tribal Council
        Sycuan Gaming Commission
        Sycuan Human Resources

**K-2**

Exhibit L



**Sycuan Gaming Commission**

**Queenette M. Pettiford**
*Chairwoman*

**Jamie LaBrake**
*Commissioner*

**Antone LaBrake**
*Commissioner*

**Yvonne Adkins-Payne**
*Executive Director*

**Ed Magdaleno**
*Asst. Executive Director*

January 24, 2020

Brigette Browning
Unite Here
2436 Market Street
San Diego, CA 92102

Dear Ms. Browning,

Thank you for completing the applications and bringing the vendor licensing fee to the Sycuan Gaming Commission.

While conducting the background check, we were informed that a dispute has arisen between Unite Here and the Sycuan Band of the Kumeyaay Nation that has put the TLRO process on hold.

Following careful consideration, it is the decision of the Sycuan Gaming Commission to hold off on the vendor licensing process until the dispute have been resolved. At that time, we will resume the background investigation or return the license packet to you.

If you have any questions, please don't hesitate to call me at (619)445-9723 extension 1103.

Regards,

Ed Magdaleno
Assistant Executive Director

5 Kwaaypaay Court • El Cajon, CA 92019 • Phone 619.445.9723 • Fax 619.659.3360

**L-1**